FRANK T. TINDLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JACKSON & TINDLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ANNETTE T. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE A. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIS K. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8999–9003. Promulgated May 10, 1928.

*H. A. Mihills, Esq.*, for the petitioners.
*A. George Bouchard, Esq.*, for the respondent.

OPINION.

GREEN: In the petition it is alleged that the respondent has failed to include in invested capital for 1917 the value of inactive timber lands in the amount of $224,430.04. The evidence presented proved that there was included in the amount so claimed an item of $150,000, which did not represent an investment in timber land but was, in fact, money advanced to the Superior Lumber & Cedar Co. and which should have been classed as an account receivable in 1917. The respondent determined the residual cost of land and timber as of December 31, 1916, to be $213,251 instead of $804,500.78, the amount shown by the books. There is nothing in the record to show that he did not include in this figure some amount as representing the value of these timber lands. The amount allowed exceeds the book value, after deducting therefrom the advance of $150,000 to the Superior Lumber & Cedar Co. and the admitted appreciation of $460,488.13, by $194,012.65, which may be regarded as the residual cost of land and timber. It is apparent that the amounts entered as cost of Tarentorus Township timber and Peterboro timber, contain many items such as interest, taxes, salaries, and other expenditures some of which are obviously business expenses.

The petitioner alleges that the depleted cost determined by the respondent was based upon the cost at March 1, 1913, of the Pellston Block only. The record does not prove that such is the case. It is apparent that the respondent based his computation on a cost of land and timber at March 1, 1913, of $305,235.33, but it has not been shown that this represented the cost of the Pellston Block only or that the respondent knew that such was the case. Nor is there submitted any proof by which we can determine the actual residual cost of the Pellston Block at December 31, 1916.

In view of these conditions we can not hold that the respondent has excluded from his determination of depleted cost the cost of

timber lands. However, it does appear that the accounts receivable in the amount of $150,000, have been excluded in the computation of invested capital. In redetermining the deficiency of the partnership for 1917 under Rule 50, the invested capital as determined by the respondent should be increased by the amount of $150,000 erroneously excluded therefrom in the deficiency letter.

Invested capital of a partnership for 1917, should not be reduced by the use of a tentative tax in the computation of earnings available for withdrawal by the partners. The same principle passed upon in the case of *L. S. Ayers & Co.*, 1 B. T. A. 1135, applies with equal force to this case, since withdrawals made by partners in 1917 are similar to dividends paid by corporations.

In determining the value of the timber property at March 1, 1913, there have been presented, as a basis for comparison, numerous sales of timber properties in Michigan having similar species of timber in approximately the same proportion. The principal group of these is known as the Ward sales. The partnership stated in its Form T submitted to the respondent, that the best of the Ward lands were on a par with his own. The testimony of Haire also confirmed this statement. Computed as set out in the findings of fact, the maximum price per thousand feet paid for the Ward tracts A to K, inclusive, was $7.50. This would indicate a value per thousand feet, based on a 100 per cent estimate, in excess of the $8 allowed by the respondent.

The evidence discloses a few purchases of very small timber stands at $10 per thousand feet. It is noted, however, that the three purchases were of timber only and were not similar to the petitioner's timber, two being of timber in excess of 18 inches and 12 inches at the stump and the third being a purchase of hardwoods only. It has been clearly brought out by the testimony of the witnesses for both parties that the smaller sized trees are not as valuable per thousand feet as the larger trees, due to the smaller percentage of high grade lumber recoverable and the greater cost of manufacture due to waste.

Much more indicative of value are the purchases, aggregating 3,000,000 feet, made by the partnership in 1912, 1913, and 1914, at an average price of less than $7 per thousand feet based on the original estimate.

The purchase of logs by the partnership in 1912, 1913, and 1914, at an average price of $9.49, would not indicate a value in excess of $8 per thousand feet, since such price must cover stumpage, cutting cost, and possibly transportation.

The earnings of the partnership as shown by operations up to March 1, 1913, would indicate a reasonable expectation of about $12

per thousand feet, lumber measure, operating profit. This profit realizable over a period of seven or eight years would indicate a value per thousand feet at March 1, 1913, of not over $7, after making due allowance for interest and carrying charges and for the return of the investment in plant and equipment.

Various witnesses for the petitioners testified to values per thousand feet of timber on the Pellston Tract ranging from $10.77 to $14, but did not indicate whether such values should be applied to 80,407,500 feet as shown by the estimate in 1912, or 116,352,897 feet as realized from the cutting of the timber. If we apply $12 per thousand to the estimate of 80,407,500 feet, the value of the tract would be about $965,000, as compared with $930,000 allowed by the respondent, which shows a smaller variance than there was in the testimony of the various witnesses.

After a careful analysis of all of the evidence we are of the opinion that the fair market value at March 1, 1913, of the petitioner's block of timber known as the Pellston Block was not in excess of $930,823.18 for the 116,352,897 feet of timber thereon.

After examining the record of land sales from 1908 to 1913, and taking into consideration the fact that lands are variable in value and that most desirable lands are the easiest to sell, and that time and carrying charges are important factors, we are of the opinion that the cut over lands at March 1, 1913, had a fair market value of $7.50 an acre, the value claimed by the petitioners.

We are unable to find in the record any evidence showing that the respondent erroneously included $1,000 in the partnership income for 1918.

Upon liquidation of the Superior Lumber and Cedar Co. in 1919, the respondent allowed a loss of $14,854.16, which represented the difference between the cost of capital stock to the partnership and the net worth of the assets acquired. In so doing the respondent must have accepted the values set forth in the assets of the company, one item of which was " Timber Lands, $232,708.42." Having accepted such value in determining profit or loss on liquidation, it was inconsistent to revalue the timber lands for depletion and for profit or loss on the subsequent sale of lands. Since the respondent does not contend that his determination of loss on liquidation is erroneous, the values assigned to the assets should be the basis for subsequent computations of income. Accordingly, we hold that the $232,708.42 should be treated as the cost to the partnership of the Munising timber land divided into $184,561.05 for timber and $48,147.37 for lands.

Regarding the last issue we have found that the partnership in determining its net income for 1919 included therein profit from the sale of lands in the amount of $5,232.25. The respondent redeter-

mined this profit to be $6,692.25 and added the latter amount to the net income already determined by the partnership, thereby duplicating income to the extent of $5,232.25. This error should be corrected and the profit on such lands redetermined on the basis that the Pellston cut-over lands had a March 1, 1913, fair market value of $7.50 an acre and that the cost of the Munising lands was $3 an acre.

The determination of the correct income of the partnership for 1917 is applicable to Docket No. 9000 only. The determination of the correct income of the partnership for 1918 is applicable to Docket Nos. 8999, 9001, 9002, and 9003. The determination of the correct income of the partnership for 1919 is applicable to Docket No. 9001 only.

*Judgment will be entered under Rule 50.*